NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DAWUD McGHEE, | : | Civil Action No. 12-7955 (CCC) |
| | : | |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | **AND ORDER** |
| DENNIS SANDERS et al., | : | |
| | : | |
| Defendants. | : | |

IT APPEARING THAT:

1.  Plaintiff Dawud McGhee ("McGhee")[1] is a state inmate confined at the Central Reception

    and Assignment Facility ("CRAF"), Stuyvesant Avenue, Trenton, New Jersey 08628.

    See http://www.manta.com/c/mmc5wmg/new-jersey-department-of-corrections

    (providing the facility's address); see also https://www6.state.nj.us/DOC_

    Inmate/details?x=1065203&n=0 (indicating that McGhee, known under his alias Charles

    Rumblin, is registered as an individual confined at the CRAF).[2]

    ---

    [1] McGhee's aliases include "Jamal Jones," "Anthony McCaskill" and "Charles
    Rumblin." See https://www6.state.nj.us/DOC_Inmate/details?x=1065203&n=0.

    [2] McGhee was born on October 12, 1979. See https://www6.state.nj.us/DOC_Inmate/
    details?x=1065203&n=0. While the website of the Department of Corrections does not (and
    cannot) contain any information about his juvenile convictions, if any, that website indicates
    McGhee's numerous adult convictions. See id. For instance, it shows that McGhee's first two
    sets of adult offenses (one including receipt of stolen property and resisting arrest, while another
    including robbery, aggravated assault, possession of stolen property, possession of controlled
    substances, resisting arrest, etc.) occurred between June and October 1997; those two chains of
    offenses resulted in convictions rendered in July 1998 and January 2001. See id. Being released
    from custody on December 14, 2008, see id., McGhee committed a burglary five months later
    (that is, in May 2009), and then a chain of burglaries and thefts one month after that (i.e., in June

2.       McGhee submitted his instant civil complaint pursuant to 42 U.S.C. § 1983, but he did

not include in his submission either his filing fee or his in forma pauperis application.

See Docket Entry No. 1.[3]

3.       McGhee's complaint maintains that:

a.       McGhee is the biological father of a certain Dawud Calver ("Culver"), a deceased

individual who was sixteen years old at the time when he was shot on December

20, 2010,[4] while committing an attempted armed robbery of a police officer;[5]

---

2009), and followed the same with one more chain of offenses that included a weapons offense, numerous receipts of stolen property, resisting arrest and causing serious injury. See id. These latter sets of offenses resulted in convictions rendered in February, March and April 2010 by three different vicinages of the Superior Court of New Jersey. See id. McGhee's current incarceration is a result of these convictions. He has been held in custody since July 17, 2009.

[3] While McGhee is an incarcerated convicted individual held at the CRAF, his complaint asserted that he is a non-confined person residing at 300 Frelinghuysen Ave, Newark, New Jersey 07114. See Docket Entry No. 1, at 6. The complaint, thus, is deficient under the Local Rules. See Local Civ. Rule 10.1(a) (providing that the initial pleading shall state the correct current address of each party, including the plaintiff).

[4] Since Culver was sixteen years old on December 20, 2010, his birthdate must be December 19, 1994, or earlier. In the event McGhee is, as he claims, Culver's biological father, it means that McGhee – being himself born on October 12, 1979 – fathered Culver when McGhee was either fourteen years old or younger.

[5] On December 20, 2010, that is, on the day of the shooting, Thomas Dinges ("Dinges") of the New Jersey Star-Ledger ("S-L") published an article reading, in pertinent part, as follows:

> An off-duty Newark police officer shot and killed a teenager who allegedly tried to rob him today in the city's West Ward, authorities said. Dawud Culver, 16, tried to rob the officer at gunpoint about 4:45 p.m. on Poe Avenue, [in Newark]. The officer opened fire and struck Culver once in the chest, [after which] the teen fled and dropped his weapon at the scene. Culver was found [by police] in East Orange General Hospital [("EOGH"). He] was transferred to University Hospital in Newark, where he was pronounced dead at 9:41 p.m. . . .

http://www.nj.com/news/index.ssf/2010/12/off-duty_newark_officer_shoots.html.

    b.      McGhee is of opinion that Culver's death resulted from an exercise of excessive force on the part of the police officer whom Culver attempted to rob;

    c.      McGhee is of opinion that the EOGH negligently treated Culver when he arrived to that medical facility being wounded as a result of the aforesaid armed robbery;

    d.      McGhee is of opinion that Dinges and the S-L had to obtain McGhee's permission to disclose Culver's name in order to write/publish an article about the robbery.

See, generally, Docket Entry No. 1, at 7-10.

4.      From the above-detailed beliefs, McGhee deduced that:

    a.      The police officer whom Culver attempted to rob must be liable to McGhee for Culver's death;

    b.      The EOGH must be liable to McGhee for negligent medical care of Culver;

    c.      The S-L and Dinges must be liable to McGhee for violating McGhee's unspecified "equal protection rights" because they identified Culver in the article without obtaining McGhee's permission to print Culver's name; and

    d.      The City of Newark must be liable to McGhee for "fail[ing] to enforce [some unspecified] departmental regulations."

Id. at 10.

5.      McGhee, therefore, is seeking the following remedies:

A[n] order [which has to] be made [stating] that Defendants [must] pay for damages with reference to pecuniary injuries resulting from death, hospital, medical and funeral expenses incurred.[6]  Monetary value of his

---

[6]  Since McGhee was incarcerated – in connection with his current chain of prison terms – starting from July 17, 2009, that is, for about a year and a half prior to Culver's death and at all times thereafter, this Court is not entirely clear as to how McGhee incurred any medical, funeral,

[presumably, Culver's] services in and about the household and possible income from summer jobs offset by cost of his maintenance.[7]  McGhee wants the Court [also] to provide any and all paperwork [associated with the] death of Dawud Culver . . . in addition, McGhee . . . ask[s] that a proper investigation [of, presumably, Culver's death] be revisited, restarted.

Id. at 12.

6.      The Clerk will not file a civil complaint unless the person seeking relief pays the entire applicable filing fee in advance, or that person applies for and is granted in forma pauperis status pursuant to 28 U.S.C. § 1915.  See Local Civil R. 5.1(f).  The filing fee for a civil rights complaint is $350.00.  See  28 U.S.C. § 1914(a).  If a prisoner seeks permission to file a civil rights complaint in forma pauperis, the Prison Litigation Reform Act ("PLRA") requires the prisoner to file an affidavit of poverty and a certified prison account statement for the six-month period immediately preceding the filing of the complaint.  See 28 U.S.C. § 1915(a)(2).  The PLRA further provides that, if the prisoner is granted permission to file the complaint in forma pauperis, then the Court is required to assess the $350.00 filing fee against the prisoner and collect the fee by directing the agency having custody of the prisoner to deduct installment payments from the prisoner's prison account equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00.  See 28 U.S.C. § 1915(b).

---

etc. expenses in connection with Culver's brief hospitalization and death.  McGhee, therefore, will be allowed an opportunity to clarify that aspect of his claims.

[7] An award of damages in a wrongful death action "is not a matter of punishment for an errant defendant or of providing for decedent's next of kin to a greater extent than decedent himself would have been able, but is rather a replacement for that which decedent would likely have provided and no more."  Hudgins v. Serrano, 453 A.2d 218, 224 (N.J. Super. Ct. App. Div. 1982).

7.   McGhee is a prisoner.  See https://www6.state.nj.us/DOC_Inmate/details?x=1065203&n
=0.  He, however, failed to prepay his filing fee or submit his complete in forma pauperis
application.   No statement in his complaint indicates that McGhee is in danger of
imminent physical injury warranting grant of conditional in forma pauperis status.  See
Docket Entry No. 1.  Therefore, his presumed in forma pauperis application will be
denied, without prejudice, and he would be allowed an opportunity to cure that
deficiency.

8.   In the event McGhee cures said deficiency, he will be directed to clarify his claims.  E.g.,
McGhee makes references to Culver's Fourth Amendment right to be free from excessive
force, but McGhee's challenges state what appears to be McGhee's own wrongful death
claim.

New Jersey's Wrongful Death Act provides, in relevant part, as follows:

> When the death of a person is caused by a wrongful act, neglect or
> default, such as would, if death had not ensued, have entitled the
> person injured to maintain an action for damages resulting from the
> injury, the person who would have been liable in damages for the
> injury if death had not ensued shall be liable in an action for
> damages, notwithstanding the death of the person injured and
> although the death was caused under circumstances amounting in
> law to a crime.

N.J. Stat. Ann. 2A:31-1.

. . . The amount of recovery is based upon the contributions, reduced to
monetary terms, which the decedent might reasonably have been expected
to make to his or her survivors.  Alfone [v. Sarno], 403 A.2d [9,] 12 [(N.J.
Super. Ct. App. Div. 1979)].  . . . A wrongful death action is available
when a child is killed by the tortious act of another.

> When parents sue for the wrongful death of a child, damages
> should not be limited to the well-known elements of pecuniary loss

such as the loss of the value of the child's anticipated help with household chores, or the loss of anticipated direct financial contributions by the child after he or she becomes a wage earner. In addition, the jury should be allowed, under appropriate circumstances, to award damages for the parents' loss of their child's companionship as they grow older, when it may be most needed and valuable, as well as the advice and guidance that often accompanies it.

Green v. Bittner, 85 N.J. 1 (N.J. 1980).

Alexander v. Whitman, 114 F.3d 1392, 1398-99 (3d Cir. 1997).  Since the language of

the statute parallels McGhee's allegations, it appears McGhee is seeking to litigate his

own claims, rather than Culver's (which he, seemingly, has no standing to litigate).[8]

---

[8]  In some scenarios, claims can be raised on behalf of a deceased.

At common law, a right to bring an action in trespass was personal and died with the person.  [See] Canino v. New York News, Inc., 96 N.J. 189 (1984). . . . Survival action statutes modif[ied] the common law rule [to] provide that the personal right of action in trespass survives to the personal representative of the decedent's estate.  [See id.]  New Jersey's Survival Action statute provides as follows:

> Executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser, and recover their damages as their testator or intestate would have had if he was living.  In those actions based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor or administrator may recover . . . .  N.J.S.A. 2A:15-3.

. . . The major item of damages in a survival action (aside from funeral and burial expenses) is recovery for the decedent's pain and suffering between the time of injury and the time of death.  . . .  Recovery is also permitted for "hedonic damages," i.e., loss of enjoyment of life.  [See] Eyoma v. Falco, 589 A.2d 653, 658 (N.J. Super. Ct. App. Div. 1991).

Alexander, 114 F.3d at 1399.  Since McGhee asserted being merely a biological father of Culver, and since McGhee was incarcerated at the time of Culver's death and at all times thereafter, it appears virtually certain that he could not have been appointed to act as the administrator of

9.    In conjunction with the foregoing, McGhee will be directed to clarify his own challenges

by stating his exact claims and the factual predicates underlying these claims, including

constitutional claims, if any. See, e.g., Ramirez-Lluveras v. Pagan-Cruz, 862 F. Supp. 2d

82 (D.P.R. 2012).

> To have standing to bring suit pursuant to section 1983, plaintiffs must
> avail themselves of the exception to the general bar on third party standing:
> that the alleged constitutional violation was aimed at the family
> relationship. [See] Robles-Vazquez v. Garcia, 110 F.3d 204, 206 n. 4 (1st
> Cir. 1997) ("surviving family members cannot recover in an action brought
> under § 1983 for deprivation of rights secured by the federal constitution
> for their own damages from the victim's death unless the unconstitutional
> action was aimed at the familial relationship").  Notably, loss of
> companionship does not establish a governmental interference aimed at the
> family relationship. See Soto v. Flores, 103 F.3d 1056, 1062 (1st Cir.
> 1997); Reyes-Vargas v. Rossello-Gonzalez, 135 F. Supp. 2d 305, 308-09
> (D.P.R. 2001).

Id. at 86.

IT IS THEREFORE on this ___28___ day of ___February___, 2013,

ORDERED that McGhee's presumed application to proceed in this matter in forma

pauperis is DENIED WITHOUT PREJUDICE; and it is further

ORDERED that the Clerk shall administratively terminate this action without filing the

complaint, Docket Entry No. 1, and without assessing a filing fee; and it is further

---

Culver's estate and, thus, has no standing to sue as Calver's personal representative  See, e.g.,
Futch v. Midland Enterprises, Inc., 471 F.2d 1195 (5th Cir. 1973) (since the decedent's father was
not the properly appointed personal representative of the decedent, he had no standing to bring
any action on behalf of his deceased son); compare Lamont v. New Jersey, 637 F.3d 177 (3d Cir.
2011) (an administrator ad prosequendum of a decedent's estate had standing to litigate, under §
1983, Fourth Amendment excessive force challenges of the decedent based on the fact that law
enforcement officers shot and killed the decedent during a standoff).  However, out of abundance
of caution, the Court will allow McGhee an opportunity to clarify whether he was appointed by
the probate court to act as administrator of Culver's estate and litigate claims on Culver's behalf.

ORDERED that administrative termination is not a "dismissal" for purposes of the statute of limitations, and that if this case is reopened pursuant to the terms of this Memorandum Opinion and Order, it is not thereby subject to the statute of limitations bar, but only if the original complaint was timely handed to McGhee's prison officials for mailing to the Court.[9] See Houston v. Lack, 487 U.S. 266 (1988); McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996); Williams-Guice v. Board of Education, 45 F.3d 161, 163 (7th Cir. 1995); and it is further

ORDERED that McGhee may have the above entitled case reopened if, within 30 days of the date of the entry of this Order, McGhee either pre-pays the $350.00 filing fee or files with the Clerk McGhee's affidavit of poverty and his certified prison account statement for the six-month period immediately preceding the submission of his original complaint, as required by 28 U.S.C. § 1915(a); and it is further

ORDERED that, in the event McGhee timely prepays his $350.00 filing fee or submits his affidavit of poverty and his certified prison account statement, then the Court will enter an order directing the Clerk to reopen the case; and it is further

ORDERED that, in the event McGhee timely prepays his $350.00 filing fee or submits his affidavit of poverty and his certified prison account statement, he shall accompany the same by a written statement: (a) clarifying the exact nature of his relationship with Culver, i.e., whether McGhee was Culver's biological or custodial parent, or appointed guardian, etc. and stating the particular document upon which McGhee bases his belief about him being Culver's parent or

---

[9] The complaint was received by the Clerk on December 26, 2012. His submissions were dated December 12, 2012. See, e.g., Docket Entry No. 1-2. It is, therefore, self-evident, that McGhee could not have handed his complaint to the prison officials for mailing to the Court prior to December 12, 2012, although he could have handed it any time between that date and December 24, 2012, inclusive. The Court's determination of that issue is reserved.

Page 8 of 9

guardian, e.g., a certified judicial finding of paternity or Culver's birth certificate, or a court order appointing McGhee as Culver's guardian, etc.; (b) detailing the exact actual relationship, if any, McGhee had with Culver during Culver's life, including whether Culver officially resided with McGhee, whether McGhee was financially supporting Culver pursuant to a court order directing child support, etc.; (c) in the event McGhee asserts claims on behalf of Culver, stating whether McGhee was ever appointed to act as an administrator of Culver's estate or as Culver's personal representative for the purposes of litigation of Culver's surviving claims, and – if yes – the date when McGhee was so appointed, the decreed time span and powers of that appointment, and the particular entity which appointed McGhee to act in that capacity; and (d) listing all of McGhee's own legal claims and the factual predicate underlying each of those claims, including his constitutional claims, if any.  All allegations made in that written statement will automatically be deemed as made by McGhee under penalty of perjury and treated accordingly; and it is further

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon McGhee by regular U.S. mail, together with a blank in forma pauperis application for incarcerated individuals seeking to file a civil complaint;[10] and it is finally

ORDERED that the Clerk shall close the file in this matter by making a new and separate entry on the docket reading "CIVIL CASE TERMINATED."

**Claire C. Cecchi, U.S.D.J.**

---

[10] Both McGhee's curative pleadings and his in forma pauperis application shall contain McGhee's *actual prison address* to be used by the Clerk for mailing.